WALGREEN COMPANY, Appellant,

v.

Cynthia HIEGER and Roy C. Hieger, both individually and as next friend of David C. Hieger, a Minor, Appellees.

No. 14–06–00962–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 11, 2007.

Rehearing Overruled Jan. 10, 2008.

Lisa Causey Mayr, John Philip Griffis, Houston, TX, for appellants.

James M. Anderson, Webster, TX, for appellees.

Panel consists of Justices YATES, FROST, and SEYMORE.

## MAJORITY OPINION

LESLIE B. YATES, Justice.

This appeal pertains to a health care liability suit brought by appellees, Cynthia Hieger and Roy C. Hieger, individually and as next friend of their minor son David C. Hieger (collectively "the Hiegers"), against appellant, Walgreen Co.[1] The trial court denied Walgreen's motion to dismiss based on inadequate expert reports. In its sole issue, Walgreen contends the trial court erred in denying its motion to dismiss because the Hiegers' expert reports did not adequately address causation. We agree, and therefore we reverse the trial court's judgment and remand for further proceedings.

### BACKGROUND

Cynthia Hieger's physician prescribed Paxil CR, an antidepressant, and she filled the prescription at a Walgreens pharmacy. In October 2003, she obtained a refill and immediately began taking medicine from the refill container. However, the tablets in the container were not Paxil CR but were Ambien, a sleep medication. A Walgreens pharmacy employee had placed the label for the Paxil CR prescription over a label for Ambien.

The Hiegers filed their health care liability claim on December 21, 2005, alleging Walgreen incorrectly refilled Ms. Hieger's prescription for Paxil CR with Ambien. Hieger alleged that the abrupt discontinuation of Paxil CR, combined with the effects of taking Ambien during the day, caused her to suffer "severe and excruciating pain, migraines, nausea, irritability, super-sensitivity to light and sound, anxiety, fear, nightmares, inability to perform household functions, inability to stand-up,

1. Appellant notes that its name is incorrectly listed as "Walgreen Company" in the case caption.

irrational behavior and to suffer very severe depression."

On April 20, 2006, the 120th day after filing suit, the Hiegers filed an expert report by Diane B. Ginsburg, a registered pharmacist and clinical professor and assistant dean for student affairs at the College of Pharmacy at the University of Texas at Austin. Walgreen objected to Ginsburg's expert report and moved to dismiss pursuant to Texas Civil Practice and Remedies Code section 74.351 arguing (1) Ginsburg's report was inadequate because it did not address causation and (2) Ginsburg, as a pharmacist, was not qualified to render a causation opinion.

The Hiegers responded and requested a thirty-day extension to file an additional expert report pursuant to Texas Civil Practice and Remedies Code section 74.351(c). The trial court granted the extension, and the Hiegers filed an expert report by Dr. Reed Young, a doctor licensed in Texas who is board certified in adult neurology and sleep medication. Walgreen filed another motion to dismiss, arguing that Dr. Young's expert report did not adequately address causation, which the trial court denied. Walgreen now appeals the trial court's denial of this second motion to dismiss.

## ANALYSIS

■ In its sole issue, Walgreen contends the trial court erred by denying its second motion to dismiss because the Hiegers did not present adequate expert opinion regarding causation. We review a trial court's ruling as to the adequacy of an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex.2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *See Garcia v.*

*Martinez,* 988 S.W.2d 219, 222 (Tex.1999). Though we may not substitute our judgment for that of the trial court in reviewing factual matters or matters committed solely to the trial court's discretion, the trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). Thus, the trial court's failure to apply or analyze the law correctly is an abuse of discretion. *Id.* at 840.

■ Pursuant to section 74.351 of the Civil Practice and Remedies Code, health care liability claimants must provide an expert report to the defendant no later than 120 days after filing the original petition. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006). A defendant may then file a motion challenging the adequacy of the report, and the trial court "shall grant" the motion if it appears that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *See id.* §§ 74.351(a), (*l*) (Vernon Supp.2006). In determining whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners of the report. *See Palacios,* 46 S.W.3d at 878.

■ The statute defines an expert report as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standard of care, the manner in which that standard was breached, and the causal relationship between that breach and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2006); *Palacios,* 46 S.W.3d at 878–79. Although a plaintiff need not marshal all of her proof and need not fulfill the same requirements as the evidence offered in a summary judgment proceeding, the expert's report must include opinions on

the three statutory elements—standard of care, breach, and causation. *See Palacios,* 46 S.W.3d at 878–79.

■■■ Walgreen contends Dr. Young's report does not provide a fair summary of the alleged causal relationship between the incorrectly refilled prescription and Ms. Hieger's alleged injuries.[2] Relative to causation, Dr. Young's report states as follows:

Paxil is an antidepressant with anxiolytic properties. It is prescribed for rheumatic pain syndromes and clearly has a central action against pain. In my own experience, when Paxil is stopped abruptly, the patient can go through a very uncomfortable period of worse depression, worse pain, and marked anxiety and hyper reactivity.

Ambien, like Halcion, can cause peculiar side effects if someone takes it and tries to stay awake for awhile; specifically they can act somewhat psychotic.

I was told by the patient that in October, 2003, a prescription for Paxil was miss-filled [sic] with Ambien and miss-labeled [sic]. *As applied to these events,* when [C]ynthia Hieger suddenly ceased taking her Paxil and began taking Ambien for daytime use, her complaints of psychosis, hypersensitivity, jitteriness, and increased pain are *consistent with* the known side effects of each medication.

(emphasis added). Walgreen argues that the language "consistent with" does not demonstrate a causal connection because language indicating that Ms. Hieger's symptoms are "consistent with" the known side effects of the medications is not the same as saying the symptoms were in fact caused by the medication. We agree. Though an expert is not required to use "magical words" in expressing her opinion and expert reports are not held to the same standard as summary judgment evidence, a plaintiff still must present an expert opinion on each element required by the statute, including causation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6); *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002); *Palacios,* 46 S.W.3d at 878–79. A description of only a possibility of causation does not constitute a good-faith effort to comply with the statute. *See Bowie,* 79 S.W.3d at 53 (holding that expert report opining about "the possibility of a better outcome" was insufficient to meet expert report statute); *Estate of Allen v. Polly Ryon Hosp. Auth.,* No. 01–04–00151–CV, 2005 WL 497291, at *3, 5 (Tex.App.-Houston [1st Dist.] Mar. 3, 2005, no pet.) (mem.op.) (finding that expert report discussing what was "more likely" or "could have contributed" constituted mere possibilities and thus were not statements of causation); *Hutchinson v. Montemayor,* 144 S.W.3d 614, 617–18 (Tex.App.-San Antonio 2004, no pet.) (concluding that expert report dis-

**2.** The dissent is correct that under section 74.351(i), expert reports may be considered together in determining whether the plaintiff has provided adequate expert opinion regarding the standard of care, breach, and causation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(i) (Vernon Supp.2006). However, because Diane Ginsburg is not a physician, she is not qualified to give an expert opinion regarding causation. *See id.* § 74.403(a) (Vernon 2005) (stating that only a physician is qualified to render causation opinions in health care liability claims); *Randalls Food &*

*Drugs, L.P. v. Kocurek,* No. 14–05–01184–CV, 2006 WL 2771872, at *3 (Tex.App.-Houston [14th Dist.] Sept. 28, 2006, no pet.) (mem.op.) (holding expert with master's degree in microbiology and Ph.D. in toxicology not qualified to provide expert opinion on causation in pharmaceutical misfill case because she was not a physician). Thus, although we agree that Ginsburg's report can be considered regarding the other statutory elements, we consider only Dr. Young's report in determining whether the Hiegers have met their statutory obligation as to the element of causation.

cussing that injury "may have been avoided" was insufficient to meet statute); *see also Smith v. Landry's Crab Shack, Inc.,* 183 S.W.3d 512, 514–15 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (affirming summary judgment for defendant because plaintiff's expert's opinion that her illness was "consistent with" food poisoning constituted no evidence of causation). Dr. Young's report states only that Ms. Hieger's symptoms are "consistent with" the known side effects of the medication and thus expresses an opinion on a possibility, not an ultimate opinion on causation. *See Smith,* 183 S.W.3d at 515 (stating that expert opinion that plaintiff's illness was "consistent with" food poisoning "did not express any ultimate opinion (in reasonable medical probability or otherwise) that [plaintiff's food poisoning] was caused by the food she ate at the restaurant"). Thus, we hold that the trial court abused its discretion in failing to dismiss the case.

Accordingly, we sustain Walgreen's sole issue and reverse the trial court's judgment. We remand with instructions for the trial court to dismiss this case with prejudice and for other proceedings consistent with this opinion. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2006).

SEYMORE, J., dissenting.

CHARLES W. SEYMORE, Justice, dissenting.

I respectfully dissent.

This court must review a trial court's ruling relative to the adequacy of an expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999). When review-

ing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). A trial court does not abuse its discretion merely because its discretionary decision is different from what an appellate court's disposition would be under similar circumstances. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The majority acknowledges but refuses to be constrained by this standard.

## I. TEXAS CIVIL PRACTICE AND REMEDIES CODE SECTION 74.351

Pursuant to section 74.351, a healthcare-liability claimant must provide an expert report to the defendant no later than 120 days after the original petition was filed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2006). If a claimant timely furnishes an expert report, a defendant may file a motion challenging the adequacy of the report. *See id.* The trial court shall grant the motion only if it appears that the report does not represent a good faith effort to comply with the statutory definition of an expert report. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*) (Vernon Supp.2006). In determining whether the report represents a good faith effort, the trial court's inquiry is limited to the four corners of the report. *See Palacios,* 46 S.W.3d at 878.

Under the statute, an expert report is defined as a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding: (1) applicable standard of care, (2) the manner in which the care provided failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2006); *Palac-*

*ios,* 46 S.W.3d at 878–79. Although a plaintiff need not marshal all of her proof, the expert's report must include opinions on the three statutory elements-standard of care, breach, and causation. *See Palacios,* 46 S.W.3d at 878–79. In compliance with these standards, the plaintiff must incorporate enough information to fulfill two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Id.* at 879. A report that merely expresses the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Id.* The expert must explain the basis for his statements and must link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002). However, to avoid dismissal, a plaintiff need not present all the evidence necessary to litigate the merits of her case. *Palacios,* 46 S.W.3d at 879. The report may be informal in that the information need not fulfill the same requirements as the evidence offered in a summary-judgment proceeding or at trial. *Id.* Moreover, the expert is not required to express the causal relationship in terms of reasonable medical probability or other "magic" words. *Wright,* 79 S.W.3d at 52.

## II. ANALYSIS

Pursuant to section 74.351(i), "nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(i) (Vernon Supp.2006). Therefore, Ginsburg's and Dr. Young's reports may be read together to satisfy the expert report requirements.

## A. Diane Ginsburg's Expert Report

The majority correctly notes that Ginsburg is not qualified under section 74.351 to provide medical causation opinions. To render an expert report regarding causation, the expert must be licensed to practice medicine in one or more of the states in the United States. *Randalls Food and Drugs v. Kocurek,* No. 14–05–01184–CV, 2006 WL 2771872, at *3 (Tex.App.-Houston [14th Dist.] Sept. 28, 2006, no pet.) (mem.op.) (holding expert with an undergraduate degree and master's degree in microbiology and a Ph.D. in toxicology and experimental surgery was not qualified to render an expert opinion regarding causation because she was not licensed to practice medicine in the United States). Here, Ginsburg was not qualified to give an opinion regarding causation because she is not licensed to practice medicine in one or more of the states in the United States. However, Ginsburg was qualified to give an opinion regarding the remaining two statutory requirements: standard of care and breach of standard of care. She addressed standard of care and breach of standard of care in her expert report as follows:

The standard of care applicable to Walgreens Pharmacy was to ensure that medications are dispensed and delivered safely and accurately as prescribed by the physician in accordance with Texas State Board of Pharmacy Rules § 291.32.C.5. Specifically, the standard of care obligates the pharmacist to assure that he/she has dispensed the right drug, in the right dose, and by the right route to the right patient (the "four rights"). The pharmacist must systematize the process in such a way that the "four rights" are observed and the drug dispensed to the patient without error. The standard of care demands a high degree of care on the part of the phar-

macist, and he/she must check the medicine and labeling very carefully before dispensing so as to avoid error, because there can be significant consequences to medication errors. In my opinion, Walgreens Pharmacy breached the standards of care in failing to observe the "four rights", failing to accurately fill Ms. Hieger's prescription, and failed to exercise a high degree of care in checking the accuracy of the prescription before dispensing it.

Accordingly, the Hiegers were required to satisfy their statutory obligation as to the causation element through Dr. Reed Young's expert report

## B. Dr. Reed Young's Expert Report

Walgreen contends Dr. Young's report does not provide a fair summary of the alleged causal relationship between the incorrectly refilled prescription and Ms. Hieger's alleged injuries. The majority concludes that Dr. Young's report is insufficient because Dr. Young has expressed "an opinion on a possibility, not an ultimate opinion on causation." I disagree. The relevant portion of Dr. Young's report is restated below for clarification and emphasis.

Paxil is an antidepressant with anxiolytic properties. It is prescribed for rheumatic pain syndromes and clearly has a central action against pain. In my own experience, when Paxil is stopped abruptly, the patient can go through a very uncomfortable period of worse depression, worse pain, and marked anxiety and hyper activity.

Ambien, like Halcion, can cause peculiar side effects if someone takes it and tries to stay awake for awhile; specifically they can act somewhat psychotic.

I was told by the patient that in October, 2003, a prescription for Paxil was miss-filled (sic) with Ambien and miss-labeled (sic). *As applied to these events, when cynthia (sic) Hieger suddenly ceased taking her Paxil and began taking Ambien for daytime use, her complaints of psychosis, hypersensitivity, jitteriness, and increased pain are consistent with the known side effects of each medication.*

(emphasis added).

Walgreen argues that the language "consistent with" does not demonstrate a causal connection. Specifically, Walgreen contends the language indicating that Ms. Hieger's symptoms are "consistent with" the known side effects of the medications is not the same as stating that the symptoms were in fact caused by the medication.

However, considering the four corners of the report, I note that Dr. Young first explained the side effects resulting from abrupt termination of treatment with Paxil. He then explained the side effects of taking Ambien while trying to stay awake. The symptoms he described were not the generally known side effects from taking the medications. He also explained the side effects of the medications as applied to these specific facts—the abrupt discontinuation of Paxil and taking Ambien during the day. Dr. Young wrote, "as applied to these events" Ms. Hieger's complaints "are consistent with" the side effects of discontinuing Paxil and taking Ambien during the daytime.

Walgreen argues, by analogy, that back pain is "consistent with" a herniated lumbar disc and that to say back pain is "consistent with" a herniated lumbar disc is not the same as opining that the pain was caused by a herniated disc. However, appellant ignores the fact that Dr. Young described side effects of the medications as applied to the Ms. Hieger's particular complaints immediately before opining that

her symptoms were consistent with those side effects. Therefore, the words "consistent with the known side effects of each medication" were not in isolation or without definition, as in appellant's analogy.

In support of its argument, Walgreen cites several cases in which other courts of appeals found language in expert reports conclusory. However, none of the cases involved misfilled prescriptions by a pharmacy. Moreover, those courts concluded that various statements regarding causation contained in expert reports were conclusory because they lacked information linking the expert's opinion to the defendant's alleged breach.[1]

In contrast to the cases cited by Walgreen, Dr. Young explained the side effects of the medications as applied to these facts and then explained that Ms. Hieger's complaints were "consistent with" the side effects of the medications. He sufficiently explained the basis for his statements and linked his conclusions to the facts. *See Wright*, 79 S.W.3d at 52. Moreover, his report constituted a good faith effort to summarize causation because it informed Walgreen of the specific conduct called into question and provided a basis for the trial court to conclude that the claims had merit. *See Palacios*, 46 S.W.3d at 879.

---

**1.** *See Wright*, 79 S.W.3d at 51 ("I do believe that it is reasonable to believe that if the x-rays would have been correctly read ... [patient] would have had the possibility of a better outcome"); *Longino v. Crosswhite*, 183 S.W.3d 913, 917–18 (Tex.App.-Texarkana 2006, no pet.) (language that "this prolonged symptomatology was a cause of [patient's] significant and permanent neurological injuries" only stated that delay in diagnosis caused significant and permanent neurological injuries without explaining basis for conclusion); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (expert report only indicated doctors failed to monitor the plaintiff's knee properly during his surgery without explaining how the departure from standard of care caused patient's injury); *Pisasale v. Ensign Group, Inc.*, No. 11–05–00196–CV, 2006 WL 2567400, at *4 (Tex.App.-Eastland Sept. 7, 2006, pet. denied) (mem.op.) (language that "I think their negligence was a proximate cause" was speculative and conclusory because it did not eliminate preexisting conditions); *Martinez v. Riegel*, No. 04–5–00336–CV, 2006 WL 1748442, at *4 (Tex.App.-San Antonio June 28, 2006, no pet.) (mem.op.) (language that "anesthetic agents" irritated "the already inflamed lung tissue" did not adequately explain causal relationship between surgery and injuries); *Northeast Med. Ctr., L.P. v. Crooks*, No. 06–05–00149–CV, 2006 WL 1358361, at *6 (Tex.App.-Texarkana May 19, 2006, no pet.) (mem.op.) (report did not draw a causal connection between nursing home patient's fall, which resulted in broken hip, and his death); *López v. Montemayor*, 131 S.W.3d 54, 59–60 (Tex.App.-San Antonio 2003, pet. denied) (language that "it is the aspiration of the bridge section which caused and precipitated the medical circumstances leading to the patient's demise" did not link dentist's failure to perform an x-ray to patient's death); *Hardy v. Marsh*, 170 S.W.3d 865, 869–70 (Tex.App.-Texarkana 2005, no pet.) (language that "if this patient ... had had more immediate treatment that a salvage of his right leg would have been more probable" was not sufficiently specific to establish causation); *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex.App.-San Antonio 2004, no pet.) (language that "[i]f this patient would have been appropriately triaged and evaluated, then in all reasonable medical probability she would have survived" failed to state the medical basis or reasoning or explain how failure to act was a substantial factor in bringing about patient's death); *Barko v. Genzel*, 123 S.W.3d 457, 460 (Tex.App.-Eastland 2003, no pet.) (language that the "violations of the standards of emergency medical practice were a proximate cause in this patient's injury" did not indicate that patient would have satisfactorily recovered from the back injury but for doctor's negligence); *Villa v. Hargrove*, 110 S.W.3d 74, 78 (Tex.App.-San Antonio 2003, pet. denied) (language that "had either of these defendants provided the appropriate care, to an overwhelming probability, [patient] would be alive and well today" did not link actions of doctors to patient's death).

Therefore, it is my considered opinion that his statements were not conclusory.

For all the reasons stated above, I would hold that the trial court did not act in an arbitrary or unreasonable fashion without reference to guiding rules or principles. Accordingly, I would overrule Walgreen Co.'s sole issue and affirm the judgment of the trial court.