Reversed and Remanded and Opinion filed August 25, 2011.

 

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-01231-CV

___________________

 

Methodist Willowbrook Hospital,
Appellant

 

V.

 

Jennifer Cullen and Christopher Cullen,
Appellees



 



 

On
Appeal from the 55th District Court

Harris County,
Texas



Trial Court Cause No. 2010-39446

 



 

 

MEMORANDUM OPINION

This healthcare liability case is governed by chapter 74 of the Texas
Civil Practice and Remedies Code.  See Tex. Civ. Prac. & Rem.
Code Ann. § 74.001-.507 (Vernon 2011).  Appellees
Jennifer and Christopher Cullen contend that appellant Methodist Willowbrook
Hospital violated minimum standards of care during and immediately after doctors
performed a cesarean section on Jennifer.  Methodist Willowbrook moved to
dismiss all claims based on alleged deficiencies in the Cullens’ expert reports. 
Methodist Willowbrook brought this interlocutory appeal challenging the trial
court’s order denying its motion to dismiss.  See Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(9) (Vernon 2008).  We reverse and remand.

BACKGROUND

The following background is based on allegations in the
Cullens’ petition and assertions in the two expert reports tendered by the
plaintiffs.  

Obstetrician Kerry Ann Kirkman, M.D., performed a
scheduled cesarean section delivery on Jennifer Cullen at Methodist Willowbrook
on April 15, 2008.  Dr. Kirkman lacerated a uterine artery during the procedure
and failed to notice this laceration immediately following the operation.  Medical
complications caused by the lacerated uterine artery eventually required an
emergency hysterectomy. 

During Jennifer’s post-operative care, she “exhibited
signs and symptoms of severe blood loss and a diminished blood pressure reading.”
 Jennifer was moved to her room on the post-partum floor at 5:30 p.m., with
Nurse Beatrice attending.  Dr. Langford, an emergency room physician, made the
next entry in the patient chart at Jennifer’s bedside at 5:45 p.m.  The Cullens
allege that Methodist Willowbrook is liable for Jennifer’s injuries because Nurse
Beatrice did not monitor, report, and record Jennifer’s post-operative signs
and symptoms and therefore failed to uphold the minimum standards of care.[1]  

The Cullens sued Methodist Willowbrook on June 25,
2010 and timely submitted expert reports prepared by Registered Nurse Susie
Dale and Obstetrician James Herd, M.D.  Nurse Dale’s report states:

It is my opinion that [Nurse Beatrice], of the post partum
unit, failed to uphold the standard of care by not documenting her admission
assessment of [Jennifer], which would have occurred near [5:30 p.m.] . . . .  The
record reflects the assessment of Dr. Langford at [5:45 p.m.], and that he was
summoned . . . .  There is no information in the record as to when the vital signs
became unstable or as to the manner in which the patient presented when she was
admitted in the post partum unit.  This information would necessarily have been
added to the record as a late entry . . . but it is the nurse’s duty to the
patient to record her initial assessment. . . .  [I]t is my opinion that [Nurse
Beatrice] . . . failed to uphold the applicable standard of care.[2]

Dr. Herd’s report relies on and
incorporates Nurse Dale’s conclusion in assessing Nurse Beatrice’s conduct:

I agree with the standard of care violation found by Susie
Dale, R.N. . . . The failure of [Nurse Beatrice] to report or record anything
between 5:30 p.m. and 5:45 p.m. was a proximate cause of the delay which
resulted in [Jennifer’s] atonic uterus and subsequent hysterectomy.  

Methodist Willowbrook moved to dismiss the suit based
on alleged deficiencies in the expert reports.  Methodist Willowbrook argued in
its motion that (1) the expert reports fail to establish a causal connection
between Nurse Beatrice’s failure to chart symptoms Jennifer exhibited between
5:30 p.m. and 5:45 p.m. and Jennifer’s hysterectomy, and that Dr. Herd’s
opinion on causation is a “mere unsupported conclusion;” and (2) Dr. Herd is
not qualified to address the nursing standard of care applicable to Nurse
Beatrice’s conduct.  Methodist Willowbrook argued that based on these
deficiencies, “[t]he Herd and Dale reports, whether taken individually or in
combination, fail to satisfy Plaintiffs’ expert report requirements as to
Methodist Willowbrook” under Texas Civil Practice and Remedies Code section
74.  After a hearing, the trial court denied the motion to dismiss.  Methodist
Willowbrook appeals from the trial court’s order denying its motion to dismiss.
 See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9).

ANALYSIS

We review a trial court’s denial of a motion to
dismiss under Texas Civil Practice and Remedies Code section 74.351(b) for
abuse of discretion.  See Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52
(Tex. 2002) (per curiam) (citing Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001)); Group v. Vicento, 164
S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  To
determine whether the trial court abused its discretion, we must decide whether
the trial court acted in an arbitrary or unreasonable manner without reference
to any guiding rules or principles.  Wright, 79 S.W.3d at 52.  In making
such a determination, a court of appeals may not substitute its own judgment
for the trial court’s judgment.  Id.

The trial court must grant a defendant’s motion to
dismiss a healthcare liability suit with prejudice unless the plaintiff serves
a timely expert report within 120 days of filing the original petition.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (b).  To qualify as a timely
expert report, the report must represent a good-faith effort to comply with the
statutory requirements for an expert report.  See id. § 74.351(l).  An
expert report is defined as a written report by an expert that provides a fair
summary of the expert’s opinions regarding (1) the applicable standard of care;
(2) the manner in which the care provided failed to meet that standard; and (3)
the causal relationship between that failure and the injury, harm, or damages
claimed.  See id. § 74.351(r)(6); see also Wright, 79
S.W.3d at 52; Palacios, 46 S.W.3d at 878.  

To constitute a “good-faith effort,” the report must
provide enough information to fulfill two purposes.  Wright, 79 S.W.3d
at 52 (citing Palacios, 46 S.W.3d at 879).  It must (1) inform the
defendant of the specific conduct the plaintiff has called into question, and
(2) provide a basis for the trial court to conclude that the claims have merit. 
Id.  A trial court shall grant a motion challenging an expert report if
it appears that the report does not represent a good-faith effort to comply
with the statutory definition of an expert report.  Walgreen Co. v. Hieger,
243 S.W.3d 183, 185 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (l)).

Methodist Willowbrook argues in its only issue on
appeal that the Cullens failed to satisfy section 74.351 because both reports
fail to establish a causal connection between the alleged breach of the
standard of care and Jennifer’s injuries.  Methodist Willowbrook argues that
Dr. Herd’s report is deficient “because it merely states his conclusions about
the standard of care, breach and causation.”  Methodist Willowbrook claims that
“[n]either report claims [Nurse Beatrice] failed to act on her assessment [of
Jennifer]” and that “[t]he reports fault [Nurse Beatrice] for not writing down
her comments in the chart, but neither report explains how this alleged
omission caused the patient’s injury.”  Methodist Willowbrook further claims
that Nurse Dale’s report “in no way suggests that this charting discrepancy
somehow caused [Jennifer] to undergo a hysterectomy.”

An expert report must include the basis of the
expert’s statements and link his or her conclusions to the facts within the
four corners of the report.  Wright, 79 S.W.3d at 52; Palacios,
46 S.W.3d at 878.  Conjecture and conclusory assertions about the plaintiff’s
claims do not satisfy the causation requirement.  See, e.g, Wright,
79 S.W.3d at 52-53 (expert report did not constitute a “good-faith effort”
where the report “simply opine[d] that [plaintiff] might have had ‘the
possibility of a better outcome’ without explaining how [defendant’s] conduct
caused injury”); Walgreen, 243 S.W.3d at 186-87 (expert opinion that
plaintiff’s symptoms were “consistent with” known side effects of medication
did not establish causation); Ehrlich v. Miles, 144 S.W.3d 620, 627-28 (Tex.
App.—Fort Worth 2004, pet. denied) (expert opinion that “negligent activity . .
. listed above is the proximate cause of [plaintiff’s] pain and suffering” did
not meet the causation requirement).

Nurse Dale’s report addresses the applicable standard
of care but does not state that Nurse Beatrice’s conduct delayed Jennifer’s
treatment.  Dr. Herd’s causation opinion is purely conclusory.  Dr. Herd’s
statement — that Nurse Beatrice’s failure to record notes in Jennifer’s chart was
“a proximate cause of the delay which resulted in [Jennifer’s] atonic uterus” —
does not sufficiently link Dr. Herd’s conclusions to the facts.  Neither report
opines that Nurse Beatrice failed to monitor Jennifer or to summon a doctor when
Jennifer’s symptoms worsened; no such conclusions can be inferred from the four
corners of the expert reports.  See Wright, 79 S.W.3d at 52; Palacios,
46 S.W.3d at 878.  Without such an explanation, the expert opinions on
causation are conclusory and the trial court exceeded its discretion in ruling
that the expert reports were sufficient.  See Wright, 79 S.W.3d at 52; Vicento,
164 S.W.3d at 727.[3]

Methodist Willowbrook also challenges the trial
court’s ruling based on Dr. Herd’s qualifications.  Because the insufficiency
of the causation opinion in Dr. Herd’s expert report alone requires reversal of
the trial court’s ruling, we do not reach the issue of Dr. Herd’s
qualifications.  See Tex. R. App. P. 47.1.

If an expert report has not been timely served
because the elements of the report are found deficient, the court may grant one
30-day extension to the plaintiff to cure the defect.  See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(c).  If a court of appeals determines that
a report deemed sufficient by the trial court is in fact deficient, the court
of appeals may remand the case so the trial court can decide whether to grant a
30-day extension to cure the deficiency.  Leland v. Brandal, 257 S.W.3d
204, 207 (Tex. 2008); Gannon v. Wyche, 321 S.W.3d 881, 899 (Tex.
App.—Houston [14th Dist.] 2010, pet. denied).  In authorizing this practice,
“the Legislature struck a careful balance between eradicating frivolous claims
and preserving meritorious ones.”  Leland, 257 S.W.3d at 208.

Because the available 30-day extension was not
granted in this case, the trial court should consider on remand whether Dr.
Herd’s attempt to satisfy the statutory requirements for causation warrants a
30-day extension.  Id. at 207 (“The statute does not allow for an
extension unless, and until, elements of a report are found deficient, and that
did not occur in this case until the court of appeals so held.”).

CONCLUSION

            We reverse the
trial court’s order of December 6, 2010, and remand this case for proceedings
consistent with this opinion.

 

                                                                                    

                                                            /s/                    William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges, Justice Seymore, and Justice Boyce.

 









[1] The Cullens’ allegations
against Dr. Kirkman regarding his conduct are not relevant to our inquiry.  Dr.
Kirkman is not a party to this appeal. 





[2] The manner in which Nurse
Beatrice is alleged to have violated minimum standards of care is unclear.  The
Cullens’ original petition alleges that Nurse Beatrice’s violation was the
failure “to promptly check the vital signs of [Jennifer] after the C-Section; .
. . to monitor Jennifer between 5:30 p.m. and 5:45 p.m; and . . . to adequately
monitor [Jennifer] post procedure.”  Nurse Dale opines that Nurse Beatrice
“failed to uphold the standard of care by not documenting her admission
assessment of [Jennifer] as a “late entry” in the patient record.                                                                       
                                                                                                                                                                                                                                    





[3] The Cullens argue that
this appeal is frivolous and request sanctions against Methodist Willowbrook. 
“If a court of appeals determines that an appeal is frivolous, it may—on motion
of any party or on its own initiative, after notice and a reasonable
opportunity for response—award each prevailing party just damages.”  Tex. R. App.
P. 45.  “Whether to grant sanctions is a matter of discretion that we exercise
with prudence and caution, and only after careful deliberation.”  Conseco
Fin. Serv. v. Klein Ind. Sch. Dist., 78 S .W.3d 666, 676 (Tex.App.—Houston
[14th Dist.] 2002, no pet.).  Although imposing sanctions is within our
discretion, we will do so only in truly egregious circumstances.  Id.  “If
an appellant’s argument on appeal fails to convince the court, but has a
reasonable basis in law and constitutes an informed, good-faith challenge to
the trial court’s judgment, sanctions are not appropriate.”  Id.  We
hold that Methodist Willowbrook’s argument on appeal is an informed, good-faith
challenge to the trial court’s ruling and that sanctions are not appropriate.