Opinion issued April 16, 2020



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00093-CV
_____

**WALGREEN CO., WALGREEN BOOTS ALLIANCE, INC. AND WALGREEN BOOTS ALLIANCE HOLDINGS, LLC, Appellants**

**V.**

**BETH HAUSER BOYER AND JOHN HAUSER, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF ALEXANDER HAUSER, DECEASED, Appellees**

---

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-55915**

---

**MEMORANDUM OPINION**

In this interlocutory appeal,[1] appellants, Walgreen Co., Walgreen Boots Alliance, Inc., and Walgreen Boots Alliance Holdings, LLC. [collectively, "Walgreen"], challenge the trial court's order denying their motion to dismiss the health care liability claim[2] brought against them by Beth Hauser Boyer and John Hauser, Individually and as Representative of the Estate of Alexander Hauser [collectively, "the Hausers"]. In three related issues, Walgreen contends that the trial court erred in denying their motion to dismiss the Hausers' claims because they failed to serve Walgreen with an adequate expert report.[3] We reverse and remand.

## BACKGROUND

### *Factual Background*

In July 2015, the Hausers' son, Alexander Hauser [hereinafter, "Alex"], presented a prescription for clonazepam to a Walgreen store in Houston, TX. Clonazepam is a sedative typically prescribed for anxiety. It is a Schedule IV

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9).

[2]     *See id.* § 74.001(a)(13) ("Health care liability claim" means a "cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.").

[3]     *See id.* § 74.351(a), (b).

2

Controlled Substance, and all physicians who prescribe such controlled substances and all pharmacies that dispense them are required to maintain current registration with the Drug Enforcement Agency. *See* 21 U.S.C.§ 822.

The clonazepam prescription, which Walgreen first filled in July 2015, was written by a doctor in Oregon,[4] who had passed away approximately one week before Alex presented the prescription to Walgreen in Houston. Walgreen did not verify that the prescribing doctor had a valid and current DEA registration before filling the prescription.

On October 5, 2015, Alex refilled the prescription at Walgreen, obtaining 60 clonazepam pills. Later that same day, Alex overdosed on the clonazepam by taking all the pills that Walgreen had dispensed earlier in the day. Alex's father, John Hauser, took him to Memorial Hermann Katy Hospital Emergency Room. While awaiting treatment, Alex fled the emergency room and was killed when he ran into traffic on the nearby freeway.

***The Lawsuit***

The Hausers initially sued Memorial Hermann for failing to adequately supervise Alex, but, they dismissed their claims against Memorial Hermann and added Walgreen, alleging that it had negligently filled a prescription written by an out-of-state-physician without first verifying that the prescribing doctor had a valid

---

[4]    According to the record, Alex had been living with his mother in Oregon before returning to Houston to live with his father in July 2015.

DEA registration.  The Hausers also added claims against 13 healthcare provides, all of whom were physicians or medical professionals at Memorial Hermann. They soon dismissed all their claims against the Memorial Hermann employees, leaving Walgreen as the sole defendant.

On March 16, 2018, the Hausers served Walgreen an expert report by Terry Seaton, a pharmacist.  Seaton's report addressed liability and causation as follows:

**Manner in Which Standard of Care was Breached:**
It does not appear that the Walgreens pharmacist who filled and dispensed a prescription for clonazepam met the standard of care by contacting the prescriber (who was deceased) on July 29, 2015.  If the prescriber's (Dr. Rushing's) office had been contacted, it would likely [have] been communicated that Dr. Rushing had passed away approximately one week prior to dispensing the prescription.  At that time, the prescription would have no longer been valid. Because the prescription was from an out-of-state prescriber and was for a controlled substance, the burden to verify the prescription is higher.

**Factual Basis for Causal Connection Between Breach of Standard of Care and Injury:**
Based on my review of the facts I've been presented to date, I believe it is more likely than not that the prescription for Klonopin (clonazepam) from Dr. James Rushing in Oregon (original date May 2015), unlawfully filled by Walgreens pharmacy, significantly contributed to his death.  If Alex Hauser would not have had access to the medication filled at that time, he would not have been able to consume a massive overdose. Clonazepam, a benzodiazepine that that enhances a principle inhibitory neurotransmitter in the brain, causes clinically significant central nervous system depression. Acute toxicity from clonazepam overdosage may lead to drowsiness, confusion, and ataxia (impaired balance).  I believe that clonazepam overdose contributed to Alex Hauser eloping from Memorial Hermann hospital and his eventual death from being hit

4

by an automobile. I reserve my right to change my opinion, should I be presented with any additional information.

On April 2, 2018, Walgreen filed its Motion Challenging Adequacy of Plaintiffs' Expert Report from Terry Seaton, seeking dismissal pursuant to section 74.351 of the Code of Civil Procedure. In the motion, Walgreen asserted that Seaton, a pharmacist, was statutorily prohibited from providing an expert opinion on causation. Walgreen also asserted that Seaton's opinions on both liability and causation were conclusory.

The Hausers responded that no causation expert was needed because medical causation was not an issue in the case. They also argue that Seaton's opinions on causation and liability were not conclusory. The Hausers did not rely on, or even mention, any expert opinion other than Seaton's in their response.

On February 4, 2019, the trial court denied Walgreen's Motion to Dismiss. This interlocutory appeal followed.

## EXPERT REPORT

In three issues, Walgreen argues that the trial court erred in denying its motion to dismiss the Hausers' claims against them because their expert report is inadequate. Specifically, Walgreen asserts that (1) the Hausers' expert, a pharmacist, is statutorily disqualified from providing an expert opinion on medical causation; (2) the expert's causation opinions are conclusory, and (3) the expert's liability opinions are conclusory.

### *Standard of Review and Legal Principles*

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We apply the same standard to a trial court's determination that an expert is qualified. *See Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996); *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 811 (Tex. App.—Houston [14th Dist.] 2008, no pet.). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).

6

A health-care-liability claimant must timely provide each defendant health care provider[5] with an expert report. TEX. CIV. PRAC. & REM. CODE § 74.351. An expert report means a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). In setting out the expert's opinions, the report must: (1) inform the defendant of the specific conduct the plaintiff has called into question and (2) provide a basis for the trial court to conclude that the claims have merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011). A report that merely states the expert's conclusions as to the standard of care, breach, and causation does not fulfill these purposes. *Palacios*, 46 S.W.3d at 879. Rather, the expert must explain the basis of her statements and must link her conclusions to the facts. *Wright*, 79 S.W.3d at 52.

If a defendant files a motion to dismiss challenging the adequacy of a claimant's expert report, a trial court must grant the motion if it appears, after a hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report or that it is not sufficiently specific to

---

[5] A "health care provider" means "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: . . . a pharmacist." TEX. CIV. PRAC. & REM. CODE § 74.001(12)(A)(iv).

7

provide a basis for the trial court to conclude that the claims have merit. TEX. CIV. PRAC. & REM. CODE § 74.351(l). The trial court, in assessing the sufficiency of the report, may not draw inferences, but instead must rely exclusively on the information contained within the four corners of the expert report or its accompanying curriculum vitae. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 463 n. 14 (Tex. 2008).

*Analysis*

In issue one, Walgreen contends that "[t]he four corners of the report and C.V. establish that Mr. Seaton is not a physician and is thus statutorily disqualified from providing expert causation opinions in this alleged medical malpractice case[.]" We agree. The Expert Report Statute provides:

"Expert" means:

> * * *
>
> with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, *a physician* who is otherwise qualified to render opinion on such causal relationship under the Texas Rules of Evidence[.]

TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(C) (emphasis added).

Similarly, Section 74.403(a) provides in pertinent part:

> [I]n a suit involving a health care liability claim against a physician or health care provider, a person may qualify as an expert witness on the issue of the causal relationship between the alleged departure for accepted standards of care and the injury, harm, or damages claimed

8

*only if the person is a physician* and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence.

TEX. CIV. PRAC. & REM. CODE § 74.403(a) (emphasis added).

Texas courts have uniformly interpreted these statutes as requiring a medical doctor to opine on causation in health care liability claims. *See Badhiwala v. Favors*, 340 S.W.3d 560, 564 (Tex. App.—Dallas 2011, no pet.) (holding that non-physicians reports cannot be considered in determining statutory element of causation); *Davisson v. Nicholson*, 310 S.W.3d 543, 558 (Tex. App.—Fort Worth 2010, no pet.) ("[B]ecause [physician's] report is sufficient as to causation, it is of no import that [psychologist] is not qualified to render an opinion on causation."); *Petty v. Churner*, 310 S.W.3d 131, 135 (Tex. App.—Dallas 2010, no pet.) ("Because [a pharmacist] is not a physician, his report cannot be considered in determining whether the reports submitted by [the plaintiffs] adequately show a causal connection between the alleged negligence and injury."); *Davis v. Webb*, 246 S.W.3d 768, 773 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("But, as discussed above, [an optometrist] is not a physician. Thus, he is barred by statute from offering an expert opinion regarding medical causation[.]"); *Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186 n.2 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("[B]ecause [a registered pharmacist and clinical professor] is not a physician, she is not qualified to give an expert opinion regarding causation.")

*Kelly v. Rendon*, 255 S.W.3d 665, 675 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("We agree with appellants that, under the statute, a nurse is not qualified to render an opinion on medical causation."); *Randalls Food and Drugs, LP v. Kocurek*, No. 14-05-01184-CV, 2006 WL 2771872, at *2-3 (Tex. App.—Houston [14th Dist.] Sept. 28, 2006, no pet.) (holding that toxicologist was not physician, thus "is not qualified to render an expert opinion regarding causation.").

Nevertheless, the Hausers respond that their expert report is not inadequate because (1) no expert report is necessary because the cause of death was a speeding car, and (2) Seaton's report is sufficient when considered in conjunction with a physician's report filed in response to an earlier Motion to Dismiss filed by Memorial Hermann before Walgreen was added to the suit. We address each argument respectively.

First, the Hausers argue that "no expert report on causation is necessary because the cause of death was a speeding car." They contend that the cause of Alex's death is not a question of medical causation because he was struck by a car traveling at highway speed in the middle of an eight-lane freeway. Instead, they contend the issue is "whether there was a causal link between Alex's presence in the middle of the freeway and the Clonazepam dispensed by Walgreen." We agree with the Hauser's assessment of the issue presented, but we disagree with their conclusion that it does not present an issue of medical causation.

10

Whether Alex overdosed on clonazepam, the effect that such an overdose would have on his mental state, and whether his resulting mental state caused him to place himself in the middle of the freeway are, in fact, issues of medical causation. As such, it was necessary for a physician to opine about whether Walgreen's dispensing of clonazepam (without first checking to see if the prescribing physician was properly registered with the DEA) caused Alex to overdose, flee the hospital, and place himself in the middle of a busy freeway.

Because medical causation evidence was necessary to connect Walgreen's alleged negligence with Alex's presence in the freeway (which led to him being struck), the cases relied on by the Hausers—*Bradley v. Rogers*, 879 S.W.2d 947, 954 (Tex. App.—Houston [14th Dist.] 1994, writ denied) and *Traut v. Beaty*, 75 S.W.3d 661, 668 (Tex. App.—Texarkana 2002, no pet.)—do not support their argument that an expert report addressing medical causation is not necessary.

In *Bradley*, the court noted that plaintiffs may establish causation in medical malpractice cases by either (1) providing expert testimony establishing a traceable chain of causation from the injury to the alleged negligent event, or (2) without expert testimony when general experience and common sense will enable a layperson to fairly determine the causal connection. 879 S.W.2d at 954. However, the court concluded that "the medical condition and treatment in question were clearly beyond the general experience and common sense of laymen." *Id.* The

court in *Bradley* did not hold that no expert testimony was required to show causation. *Id.* Indeed, in that case, medical expert testimony was required, but was found lacking. *Id.*

Similarly, in *Traut*, the court held that expert testimony was required to establish the causal connection between the doctor's negligence in leaving a piece of wire in the plaintiff's body and the plaintiff's pain. *Id.* at 668. In so holding, the court distinguished *Manax v. Ballew*, 797 S.W.2d 71, 73 (Tex. App.—Waco 1990, writ denied), a case in which no expert testimony was necessary to establish a causal link between a doctor's operating in the wrong location and the plaintiff's resulting injury.

This case is not like *Manax*, in which no expert testimony was necessary because "any lay person could look at the plaintiff's back and determine that the surgery was performed in a different area than the doctor agreed to perform it." *Id.* (citing *Manax*, 797 S.W.2d at 73). Knowing the effect that taking an overdose of clonazepam would have had on Alex and whether that would have caused him to enter a busy freeway were issues beyond the general experience and common sense of most laymen. Thus, we disagree with the Hausers' assertion that no report on medical causation was required.

Second, the Hausers argue that, if you consider the expert report of Dr. George Glass—which was filed as a part of the initial suit against Memorial

Hermann, but before Walgreen was sued—in conjunction with Seaton's report, all the requirements of a medical report, including causation, have been met.

We agree with the Hausers that expert reports may be considered together in determining whether the plaintiff has provided adequate expert opinion regarding the standard of care, breach, and causation. *See* TEX. CIV. PRAC. & REM. CODE §74.351(i); *see also Hieger*, 243 S.W.3d at 186 n.2 (noting that expert reports can be considered together but considering only doctor's report on issue of medical causation). However, the expert report statute also provides in pertinent part that:

> [i]n a health care liability claim, a claimant shall, not later than the 120th day *after the date each defendant's original answer is filed*, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

TEX. CIV. PRAC. & REM. CODE § 74.351(a) (emphasis added).

The record in this case shows that Dr. Glass's report is dated January 17, 2017 and was served on the Memorial Hermann defendants on January 20, 2017. Walgreen was not added to the lawsuit until October 3, 2017 and the Hausers' claims against Memorial Hermann were then dismissed leaving Walgreen as the sole defendant.

Walgreen filed an answer on November 27, 2017, and, on March 16, 2018, the Hausers served Walgreen with an expert report by a pharmacist, Terry Seaton. The Hausers did not serve Dr. Glass's report on Walgreen.

13

On April 2, 2018, Walgreen filed its Motion to Dismiss challenging Seaton's expert report. On May 31, 2018, the Hausers filed a reponse to Walgreen's Motion to Dismiss. Again, their response did not reference Dr. Glass's expert report.

In fact, the only place that Dr. Glass's expert report can be found in the appellate record is attached to Memorial Hermann's February 9, 2017 Motion to Dismiss and the Hausers' April 3, 2017 response to that motion, both of which were filed well before Walgreen was sued on October 3, 2017.

The Hausers had until 120 days after Walgreen's November 27, 2017 answer to serve Dr. Glass's report on Walgreen, which it did not do. Having never served, or even mentioned Dr. Glass's report, in connection with Walgreen's Motion to Dismiss, the Hausers cannot rely on it now.

## CONCLUSION

Because the Hausers' expert cannot by statute opine on the medical causation between Walgreen's alleged negligence and Alex's death, and because we reject the Hausers' arguments that (1) no expert report on causation was required or that (2) Dr. Glass's report supplied the necessary causation opinion, we sustain Walgreen's first issue on appeal. Considering our disposition of Walgreen's first issue, we need not address its second and third issues regarding whether Seaton's causation and liability opinions are conclusory.

14

We reverse the trial court's interlocutory order denying Walgreen's Motion to Dismiss and remand for further proceedings.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.