**Opinion issued August 6, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00668-CV

_____

**NORTHWEST EMS CONSULTANTS, P.A. D/B/A NORTH CYPRESS EMS, Appellant**

**V.**

**FRANCES GUILLORY, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-61162**

---

## MEMORANDUM OPINION

In this interlocutory appeal,[1] appellant, Northwest EMS Consultants, P.A., doing business as North Cypress EMS ("North Cypress EMS"),[2] challenges the trial court's order overruling its objections and denying its motions to dismiss the health care liability claim[3] made against it by appellee, Frances Guillory, in her suit for negligence. In two issues, North Cypress EMS contends that the trial court erred in overruling its objections and denying its motions to dismiss Guillory's claims against it.[4]

We reverse and remand.

## Background

In her petition, Guillory alleges that on or about September 9, 2016, North Cypress EMS, an emergency medical services provider, transferred her from one hospital to another by ambulance. According to Guillory, while North Cypress EMS's agents or employees attempted to transfer her from the ambulance to the hospital, they dropped her onto the ground causing her unspecified, but severe injuries and damages.

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9).

[2]     Frances Guillory sued "North Cypress EMS." In its answer, North Cypress EMS correctly identified itself as "Northwest EMS Consultants, P.A., doing business as North Cypress EMS."

[3]     *See id.* § 74.001(a)(13) (defining "[h]ealth care liability claim").

[4]     *See id.* § 74.351 (governing expert reports).

2

Guillory brings a health care liability claim against North Cypress EMS for negligence. She alleges that its agents or employees were negligent in failing to safely transport her and in dropping her while transporting her from an ambulance to a hospital. The negligent acts and omissions of North Cypress EMS's agents or employees proximately caused her injuries and damages. Guillory seeks damages for physical and mental pain and anguish, loss of wage-earning capacity, physical impairment, disfigurement, and medical expenses.

To support her claim, Guillory timely served upon North Cypress EMS two medical expert reports. The first expert report, authored by Jeffrey P. Jannarone, states that he is a licensed Emergency Medical Technician ("EMT") in New Jersey and is an "expert in the field of emergency services."[5] According to Jannarone, he has "over 30 years of experience in the discipline of emergency medical services," including experience in academic teaching and the physical transport of medical patients. He has been "actively engaged in the practice of ambulance patient transportation since 1988" and has experience with the proper handling and transportation of patients, including the lifting of patients. Jannarone is employed as a consultant and expert by Robson Forensic, Inc. located in Philadelphia, Pennsylvania. In connection with his employment he "provide[s] technical investigations, analysis, reports, and testimony toward the resolution of civil and

---

[5] Jannarone attached his curriculum vitae ("CV") to his expert report.

3

criminal litigation[,] including investigations into the proper emergency services management policies, procedures[,] and training regarding [EMTs]." He often analyzes, interprets, and applies knowledge of patient transport. That knowledge includes, but is not limited to, "pre-shift equipment checks, procedures for lifting and moving patients, and transferring a patient into and out of an ambulance."

In his report, Jannarone states that on September 9, 2016, Guillory was a patient at a Memorial Hermann Convenient Care Center when she needed to be transported to Memorial Hermann Memorial City Medical Center ("Memorial Hermann Memorial City"). Two North Cypress EMS EMTs transferred Guillory to a stretcher, secured by straps, and loaded her into an ambulance. The EMTs then transported Guillory by ambulance to Memorial Hermann Memorial City. While trying to unload Guillory from the ambulance, the EMTs dropped her while she was strapped to the stretcher.

In Jannarone's opinion, the North Cypress EMS EMTs were required to properly unload Guillory from the ambulance and proper unloading "included the safety provided by not dropping . . . Guillory." Jannarone states that the EMTs "failed to safely unload . . . Guillory when they dropped [her] while she was strapped on a stretcher." And by failing to properly unload Guillory, the EMTs "violated the industry standard of care for a reasonable [EMT] and were a cause of th[e] incident."

4

Guillory's second expert report, authored by Kevin Anuvat, M.D., states that Dr. Anuvat is a board-certified physiatrist and pain medicine doctor.[6]  He is licensed to practice medicine in the State of New York and the State of Texas.

In his report, Dr. Anuvat states that on September 9, 2016, Guillory, a forty-one-year-old female, sustained a fall while North Cypress EMS transported her to Memorial Hermann Memorial City.  At the time of her fall, Guillory was on a stretcher and experiencing abdominal pain and gastroenteritis.  According to Dr. Anuvat, the legs of the stretcher "failed to come down" and caused Guillory to be dropped to the ground.  After the incident, Guillory had pain in her neck, midback, and low back.

On December 13, 2016, Guillory was evaluated at Interventional Spine of Texas, where it was determined that she had injuries to her cervical and lumbar spine.  She was experiencing frequent sharp, shooting pain that radiated to her shoulders and both legs, with numbness and tingling. Guillory's magnetic resonance imaging ("MRI") showed disc herniations and annular fissures, which were consistent with her primary complaints and the pertinent positive physical examination findings.

According to Dr. Anuvat, the findings of her cervical spine MRI, related to her C5-C6 intervertebral disc, were:

---

[6]     Dr. Anuvat attached his CV to his expert report.

5

Broad-based 3.7 mm posterior right central disc protrusion-subligamentous disc herniation with superimposed 5 mm posterior right central annular fissure (high intensity zone).  Disc protrusion extends into the epidural fat and indents the thecal sac with contact on the ventral cervical cord.  The intervertebral disc demonstrates decreased central hyperintensity with preservation of the disc height] [and] may suggest an acute/subacute injury with leakage of central disc contents.

(Emphasis omitted.)  The findings of her cervical spine MRI, related to her C6-C7 intervertebral disc, were:

Broad-based 2.0 mm posterior central disc protrusion-subligamentous disc herniation with a superimposed 4 mm central annular fissure (high intensity zone).  Disc protrusion extends into the epidural fat and indents the thecal sac without contact on the ventral cervical cord.  The intervertebral disc demonstrates decreased central hyperintensity with preservation of the disc height] [and] may suggest an acute/subacute injury with leakage of central disc contents.

(Emphasis omitted.)  The findings of her lumbar spine MRI were:

1.  L5-S1:   Broad-based posterior left central disc protrusion-subligamentous disc herniation extends into the epidural fat and indents the thecal sac.

2.  L4-L5:   Broad-based 2.0 mm posterior left central disc protrusion-subligamentous disc herniation extends into the epidural fat and indents the thecal sac.

(Emphasis omitted.)

Dr. Anuvat states in his report that a herniated disc or protrusion is a condition in which the annulus fibrosus (outer portion) of the vertebral disc is torn, enabling the nucleus (inner portion) to herniate or protrude through the fibers.  A bulging disc is a condition in which there is laxity in the annulus from degenerative fibrosus

(outer portion), unlike a herniated disc in which the nucleus leaks out of the disc. Bulges are considered to be more likely degenerative in nature whereas hernias are a result of an incident such as trauma or repetitive use.

According to Dr. Anuvat, before Guillory was evaluated at Interventional Spine of Texas, she "completed PT/chiropractic care" and used "non-narcotic prescription analgesics," which did not relieve her symptoms. Thus, because Guillory had not responded to conservative care and medications, after her evaluation at Interventional Spine of Texas, it became "necessary to proceed with interventional treatment." On January 12, 2017, Guillory underwent a Lumbar Transforaminal Epidural Steroid Injection, which resulted in a substantial reduction of pain. On January 26, 2017, Guillory reported a seventy-percent improvement in her low back pain with increased function and range of motion in her low back.

As to causation of Guillory's cervical and lumbar spine injuries, Dr. Anuvat states that "Guillory was a young healthy female with no history of trauma, musculoskeletal pain complaints, or radiculopathy symptoms prior to the fall she suffered on [September 9, 2016]." After the fall, Guillory had complaints of pain.

Dr. Anuvat states that he found a study that determined that less than twenty percent of individuals under sixty years old will have a disc herniation in the low back and ten percent of individuals over the age of forty years old will have a disc herniation in the neck. And he found a second study, related to spinal imaging

7

findings of asymptomatic patients, that determined that there is a thirty-three percent chance that the disc protrusions seen on the MRI were due to a degenerative process. Thus, given that Guillory was forty-one years old at the time of the fall, it is "within a reasonable medical probability that the [incident] caused the disc herniations and not the normal aging process." Dr. Anuvat then concludes that "[t]o a reasonable degree of medical certainty, . . . Guillory's cervical and lumbar disc herniations and associated pain complaints were caused by the fall from the stretcher that [she] experienced while being transported by North Cypress EMS" on September 9, 2016.

North Cypress EMS objected to Jannarone's expert report because it does not provide a fair summary of the applicable standard of care and how North Cypress EMS breached the standard of care and it does not explain the causal relationship between the alleged breach of the standard of care and Guillory's alleged injuries. North Cypress EMS also asserted that Jannarone is not qualified to offer opinions as to the applicable standard of care and causation.

North Cypress EMS objected to Dr. Anuvat's expert report because it does not provide a fair summary of the causal relationship between North Cypress EMS's alleged breach of the applicable standard of care and Guillory's alleged injuries. Dr. Anuvat's opinion as to causation is conclusory and only states that Guillory purportedly had no symptoms before the incident and she complained of symptoms afterward, so the incident must have caused her injury. It does not inform North

Cypress EMS of the conduct that Guillory calls into question and does not provide a basis for the trial court to conclude that Guillory's claim has merit. North Cypress EMS also asserted that Dr. Anuvat is not qualified to offer an opinion as to the applicable standard of care or causation. Because of the deficiencies in both expert reports, North Cypress EMS requested that Guillory's health care liability claim against it be dismissed.[7]

After Guillory filed a response to North Cypress EMS's objections and requests for dismissal, the trial court overruled its objections to both expert reports and denied its motions to dismiss Guillory's health care liability claim against it.

## Standard of Review

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We apply the same standard to a trial court's determination that an expert is qualified. *See Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996); *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 811 (Tex. App.—Houston [14th Dist.] 2008, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner

---

[7] North Cypress EMS filed separate objections to each report and each objection contained a request that Guillory's health care liability claim against it be dismissed.

without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). When reviewing matters committed to a trial court's discretion, we may not substitute our own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Harris Cty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2007, no pet.). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). In conducting our review, we always bear in mind that the Legislature's goal in requiring expert reports was to deter baseless claims, not block earnest ones. *Jackson v. Kindred Hosps. Ltd. P'ship*, 565 S.W.3d 75, 81 (Tex. App.—Fort Worth 2018, pet. denied); *Gonzalez v. Padilla*, 485 S.W.3d 236, 242 (Tex. App.—El Paso 2016, no pet.); *see also Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) ("The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." (internal footnotes omitted)).

**Sufficiency of Expert Report**

In its first issue, North Cypress EMS argues that the trial court erred in overruling its objections to Jannarone's expert report and denying its motion to dismiss Guillory's health care liability claim against it because Jannarone's expert

report does not adequately address the applicable standard of care, breach of the standard of care, and causation. In its second issue, North Cypress EMS argues that the trial court erred in overruling its objections to Dr. Anuvat's expert report and denying its motion to dismiss Guillory's health care liability claim against it because Dr. Anuvat is not qualified to render an opinion on the issue of causation and his expert report does not adequately address causation.

Under the Texas Medical Liability Act ("TMLA"), a plaintiff asserting a health care liability claim must timely serve a defendant health care provider[8] with at least one expert report, with a CV for the expert whose opinion is offered, to substantiate the merits of the plaintiff's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (i); *see also Mangin v. Wendt*, 480 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The expert report must provide a "fair summary" of the expert's opinions regarding (1) the applicable standard of care, (2) the manner in which the care rendered by the defendant health care provider failed to meet the standard of care, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see*

---

[8] *See id.* § 74.001(a)(12)(A) ("Health care provider" means "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: . . . a health care institution." (internal quotations omitted)); *see also id.* § 74.001(a)(11)(G) ("Health care institution" includes "an emergency medical services provider." (internal quotations omitted)).

11

*also Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). A "fair summary" of the expert's opinions means that, at the least, the report must state more than the expert's mere conclusions as to the standard of care, breach, and causation; it must instead explain the basis of the expert's opinion so as to link the conclusions to the facts of the case. *See Jelinek*, 328 S.W.3d at 539; *Wright*, 79 S.W.3d at 52.

If a plaintiff fails to timely serve an expert report, then on the motion of a defendant health care provider, the trial court must dismiss the pertinent health care liability claim with prejudice and award attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Baty v. Futrell*, 543 S.W.3d 689, 692 (Tex. 2018). But if a plaintiff timely serves an expert report and a defendant health care provider files a motion challenging the adequacy of that report, then the trial court may only grant the motion "if it appears to the court, after [a] hearing, that the report does not represent an objective good faith effort to comply with the [TMLA's] definition of an expert report." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *Baty*, 543 S.W.3d at 692–93; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) ("Expert report" means "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the . . . health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." (internal quotations omitted)).

12

An expert report qualifies as an "objective good faith effort" to avoid dismissal if it discusses each element with sufficient specificity so that it (1) informs the defendant health care provider of the specific conduct that the plaintiff questions or about which the plaintiff complains and (2) provides a basis for the trial court to conclude that the plaintiff's health care liability claim has merit. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017); *see also Baty*, 543 S.W.3d at 693–94. The expert report is not required to use any particular words, and it may be informal, "but bare conclusions will not suffice." *Scoresby*, 346 S.W.3d at 555–56.

In determining whether an expert report constitutes an "objective good faith effort" to address each element, "a trial court may not draw inferences; instead, it must exclusively rely upon the information contained within the four corners of the report." *Puppala v. Perry*, 564 S.W.3d 190, 197 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (internal quotations omitted). And when the issue of adequacy hinges on an expert's qualifications, the trial court may also consider the "four corners" of the expert's CV. *Id.*; *Mangin*, 480 S.W.3d at 706. Courts must view the report in its entirety, rather than isolating specific portions or sections, to determine whether it is sufficient. *See Baty*, 543 S.W.3d at 694; *see, e.g.*, *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015); *see also Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 282 (Tex. App.—Austin 2007, no pet.) ("The form of the report

13

and the location of the information in the report are not dispositive.").   In reviewing the adequacy of an expert report, a trial court may not consider an expert's credibility, the data relied upon by the expert, or the documents that the expert failed to consider at this pre-discovery stage of the litigation.  *See Mettauer v. Noble*, 326 S.W.3d 685, 691–92 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Gonzalez*, 485 S.W.3d at 245.

Multiple expert reports may be considered together in determining whether a plaintiff has provided a report meeting the statutory requirements.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i); *Salias v. Tex. Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 534 (Tex. App.—Waco 2010, pet. denied); *Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186 n.2 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  A single report addressing both liability and causation issues related to a defendant health care provider is not required.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i); *Gannon v. Wyche*, 321 S.W.3d 881, 896 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).  But read together, the multiple expert reports must provide a "fair summary" of the expert's opinions regarding (1) the applicable standard of care, (2) the manner in which the care rendered by the defendant health care provider failed to meet the standard of care, and (3) the causal relationship between that failure and the injury, harm, or damages claimed.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i), (r)(6); *see also Gannon*, 321 S.W.3d at 896.

## A. Standard of Care and Breach

In a portion of its first issue, North Cypress EMS asserts that Jannarone's expert report does not adequately address the applicable standard of care and breach of the standard of care. According to North Cypress EMS, the report does not inform it of the applicable standard of care or the manner in which the standard was breached and it does not identify the steps that North Cypress EMS or its agents or employees should have taken, but did not.

As stated above, an expert report must provide a "fair summary" of the expert's opinions regarding the applicable standard of care and the manner in which the care rendered by the defendant health care provider failed to meet that standard. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see also Potts*, 392 S.W.3d at 630.

Identifying the standard of care in a health care liability claim is critical. *Palacios,* 46 S.W.3d at 880; *see also Wilcox v. Montalvo*, No. 13-10-611-CV, 2011 WL 1443689, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 14, 2011, no pet.) (mem. op.) ("Identifying the standard of care is vital because [w]hether a defendant breached [its] . . . duty to a patient cannot be determined absent specific information about what the defendant should have done differently." (internal quotations omitted) (first alteration in original)). To adequately identify the standard of care, an expert report must set forth "specific information about what the defendant should

15

have done differently." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 226 (Tex. 2018) (internal quotations omitted). Thus, related to the standard of care and breach, the expert report must explain what the defendant health care provider should have done under the circumstances and what the health care provider did instead. *Palacios*, 46 S.W.3d at 880; *see also Kline v. Leonard*, No. 01-19-00323-CV, 2019 WL 6904720, at *7 (Tex. App.—Houston [1st Dist.] Dec. 19, 2019, pet. denied) (mem. op.). It is not sufficient for the expert to simply state that he knows the standard of care and concludes that it was or was not met. *Palacios*, 46 S.W.3d at 880.

As to the applicable standard of care, Jannarone, in his expert report, states that he has "knowledge of the applicable standard of care for [EMTs]" and that the North Cypress EMS EMTs were required to properly unload Guillory from the ambulance and proper unloading "included the safety provided by not dropping . . . Guillory." As to the breach of the standard of care, Jannarone states that the EMTs "failed to safely unload . . . Guillory when they dropped [her] while she was strapped on a stretcher." And by failing to properly unload Guillory, the EMTs "violated the industry standard of care for a reasonable [EMT] and were a cause of th[e] incident."

"A report that merely states the expert's conclusions about the standard of care[] [and] breach" does not fulfill the purposes of requiring a good-faith effort. *Id.*

16

at 879. Instead, an expert must provide statements concerning the applicable standard of care that identify the care expected that was not given with such specificity that inferences are not needed to discern it. *Id.* at 880. The report must provide a basis for the trial court to conclude that the plaintiff's claim has merit. *Id.* at 879.

Jannarone's expert report is conclusory with respect to both the applicable standard of care and breach. He fails to specifically describe the standard of care for transferring a patient strapped to a stretcher from an ambulance to a hospital and what the North Cypress EMS EMTs failed to do that breached that standard. *See Abshire*, 563 S.W.3d at 226 (to adequately identify standard of care, expert report must set forth "specific information about what the defendant should have done differently"); *Palacios*, 46 S.W.3d at 879–80 (mere statement that precautions to prevent patient's fall were not proper did not constitute statement of applicable standard of care); *Wilcox*, 2011 WL 1443689, at *4 (expert report conclusory where it failed to mention precautions that should have been taken to properly transfer patient in wheelchair and how defendant physician acted or failed to act in accordance with those precautions); *Hoelscher v. San Angelo Cmty. Med. Ctr.*, No. 03-03-00236-CV, 2004 WL 2731967, at *2–4 (Tex. App.—Austin Dec. 2, 2004, no pet.) (mem. op.) (although expert report focused on transfer of patient between gurney and procedure table, it only stated that whatever method used to transfer

17

patient was required to be performed in manner that did not harm patient's extremities or body parts which is not sufficient). An expert report that opines that the applicable standard of care requires that a patient not to be injured while she is being transferred is not sufficient to notify the defendant health care provider of the specific conduct complained of and does not allow the trial court to assess the merits of the plaintiff's claim. *See Hoelscher*, 2004 WL 2731967, at \*2–4; *cf. Robles v. Pinnacle Health Facilities XV, LP*, No. 14-18-00135-CV, 2020 WL 746720, at \*4–7 (Tex. App.—Houston [14th Dist.] Feb. 13, 2020, no pet.) (mem. op.) (expert report sufficient where it explained that standard of care required presence of two staff persons during patient transfer, explained in detail role of each staff person involved in patient transfer, and explained how presence of only single staff person breached that standard). Here, Jannarone's expert report fails to inform North Cypress EMS of the specific conduct that Guillory calls into question, and it does not provide a basis for the trial court to conclude that Guillory's health care liability claim has merit. *See Baty*, 543 S.W.3d at 693–94; *Miller*, 536 S.W.3d at 513; *cf. Robles*, 2020 WL 746720, at \*4–7; *see also Palacios*, 46 S.W.3d at 880 ("While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." (internal quotations omitted)).

18

We conclude that Jannarone's expert report does not adequately inform North Cypress EMS of the applicable standard of care and the manner in which the care rendered by North Cypress EMS failed to meet that standard.[9]  Thus, we hold that the trial court erred in overruling North Cypress EMS's objections and in denying its motion to dismiss Guillory's health care liability claim against it because Jannarone's report does not adequately address the applicable standard of care and breach of that standard.[10]

We sustain this portion of North Cypress EMS's first issue.

## B. Causation

In its second issue, North Cypress EMS asserts that Dr. Anuvat is not qualified to render an expert opinion on the issue of causation and his expert report does not adequately address causation.

An expert report by a person not qualified to testify does not constitute a good-faith effort to comply with the TMLA's definition of an expert report and warrants dismissal.  *See Mettauer*, 326 S.W.3d at 693; *see also* TEX. CIV. PRAC. &

---

[9]  To the extent that our learned colleague attempts to speculate as to what we believe Jannarone's expert report should have said, such conjecture is misleading and irrelevant.  We are not in the business of instructing experts on what to include in their expert reports.  Instead, we are only tasked with determining whether Jannarone's expert report adequately addresses the applicable standard of care and breach of the standard of care.  And here it does not.

[10]  Guillory does not assert that Dr. Anuvat's expert report sets forth the applicable standard of care or how that standard was breached by North Cypress EMS.

REM. CODE ANN. § 74.351(l), (r)(6).  Whether an expert witness is qualified to offer an expert opinion lies within the sound discretion of the trial court.  *Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).  The expert's qualifications must appear in the four corners of the expert report or in the expert's accompanying CV.  *Puppala*, 564 S.W.3d at 197, 202; *see also Cornejo*, 446 S.W.3d at 121.

To be qualified to opine on the causal relationship between a defendant health care provider's alleged failure to meet an applicable standard of care and the plaintiff's claimed injury, harm, or damages, the author of an expert report must be a physician who is qualified to render opinions on such causal relationships under the Texas Rules of Evidence.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a); *see id.* § 74.351(r)(5)(C) ("Expert" means "with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." (internal quotations omitted)); *Cornejo*, 446 S.W.3d at 120.

An expert witness may be qualified on the basis of knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would "assist the trier of fact" in understanding

the evidence or determining a fact issue. *Cornejo*, 446 S.W.3d at 121; *see* TEX. R. EVID. 702. Thus, a plaintiff must show that her expert has "knowledge, skill, experience, training, or education" regarding the specific issue before the court that would qualify the expert to give an opinion on that particular subject. *Broders*, 924 S.W.2d at 153–54 (internal quotations omitted); *see also Cornejo*, 446 S.W.3d at 121.

Not every licensed physician is qualified to testify on every medical question. *See Broders*, 942 S.W.2d at 152–53; *Cornejo*, 446 S.W.3d at 121. Yet, a physician need not practice in the particular field about which he is testifying so long as he can demonstrate that he has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify him to give an opinion on that subject. *Cornejo*, 446 S.W.3d at 121. In other words, what is required is that the physician demonstrate that he is qualified to opine on the specific issue before the court. *Puppala*, 564 S.W.3d at 202.

North Cypress EMS argues that Dr. Anuvat is not qualified to render an expert opinion on the issue of causation because "none of [his] training, education, or experience . . . establishes that he is qualified to provide expert opinions regarding the diagnosis or cause of spinal injuries," and in health care liability cases, "[c]ourts have held repeatedly that pain management doctors lack qualifications to opine regarding [the] causation of orthopedic and spinal injuries."

Dr. Anuvat is licensed to practice medicine in the State of New York and the State of Texas. He is a board-certified physiatrist[11] and pain medicine doctor. He is currently employed by DaVinci Pain Consultants as an Interventional Pain Management Attending. Previously, he was employed, for a year, by Interventional Spine of Texas as an Interventional Pain Management Attending and by Community General Hospital in Syracuse, New York, for a year, as an Acute Inpatient Rehabilitation Moonlighting Attending. He received his medical degree from Ross University School of Medicine in Portsmouth, Dominica. He did a year internship for internal medicine at the University of Buffalo in Buffalo, New York. He completed his residency in physical medicine and rehabilitation, and he completed a pain medicine fellowship at the State University of New York Upstate Medical University in Syracuse, New York.

In her petition, Guillory alleges that North Cypress EMS's agents or employees were negligent in failing to transport her safely and dropping her while transporting her from an ambulance to a hospital. Guillory, thus, had the burden to establish that Dr. Anuvat had some "knowledge, skill, experience, training, or

---

[11] A physiatrist is a physician specializing in physiatry or physical medicine and rehabilitation. *See Cayton v. Moore*, 224 S.W.3d 440, 442 n.1 (Tex. App.—Dallas 2007, no pet.). Physical medicine and rehabilitation is the branch of medicine emphasizing the prevention, diagnosis, and treatment of disorders that may produce temporary or permanent impairment. *Id.* Physical medicine and rehabilitation provides integrated care in the treatment of all neurologic and musculoskeletal disabilities from traumatic brain injury to lower back pain. *Id.*

education" about whether those allegedly negligent acts caused Guillory's claimed injury, harm, or damages. *See Matagorda v. Nursing & Rehab. Ctr., L.L.C. v. Brooks*, No. 13-16-00266-CV, 2017 WL 127867, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 12, 2017, no pet.) (mem. op.); *Diagnostic Research Grp. v. Vora*, 473 S.W.3d 861, 869–70 (Tex. App.—San Antonio 2015, no pet.); *see also Cornejo*, 446 S.W.3d at 121 (plaintiffs required to establish expert qualified on basis of knowledge, skill, experience, training, or education to offer opinion concerning causal link between alleged breaches of standard of care and injuries suffered); *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 762 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (party offering witness as expert must establish witness is qualified). In his report, Dr. Anuvat states that Guillory had injuries to her cervical and lumbar spine. But, nothing in his expert report and CV addresses whether, or how, his knowledge, skill, experience, training, or education as a physiatrist and pain medicine doctor qualifies him to opine on whether the negligence of North Cypress EMS's agents or employees caused Guillory's injuries.[12] *See Estorque v. Schafer*, 302 S.W.3d 19, 26 (Tex. App.—Fort Worth

---

[12]   In one line in his CV, Dr. Anuvat states that he was a volunteer EMT for the City of Austin Emergency Medical Services from 2007-2008 at the same time that he was attending medical school. His CV also lists under the "Certification" section: "2006 State of Texas Emergency Medical Technician-Basic." There is no explanation or detail provided related to these two entries on his CV. These lines are not sufficient to show that he is qualified to opine on the causal relationship between North

23

2009, no pet.) ("Qualifications must appear in the expert report [and CV] and cannot be inferred."); *Palafox v. Silvey*, 247 S.W.3d 310, 316 (Tex. App.—El Paso 2007, no pet.) ("In deciding whether an expert is qualified, the trial court must ensure those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." (internal quotations omitted)); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (expert must be qualified to opine on causal relationship between defendant health care provider's alleged failure to meet applicable standard of care and plaintiff's claimed injury, harm, or damages).

Although Guillory asserts that Dr. Anuvat must be qualified to opine on the issue of causation because he treated Guillory at some point after the incident,[13] this does not automatically qualify him as an expert on the causal relationship between North Cypress EMS's alleged failure to meet an applicable standard of care and Guillory's claimed injury, harm, or damages. *See Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003) (medical license does not automatically qualify

---

Cypress EMS's alleged failure to meet an applicable standard of care and Guillory's claimed injury, harm, or damages.

[13]     Guillory, in her brief, refers to Dr. Anuvat as a "treating provider." Dr. Anuvat, however, in his report does not state that he treated Guillory at any point. Instead, above his signature line on his report, it merely states, without detail: "TREATING PHYSICIAN[.]  I, Kevin Anuvat, MD, being a doctor duly licensed to practice medicine in the State of Texas, pursuant to the applicable provisions of the Civil Practice Law and Rules, Section 2106, hereby affirm, under penalties of perjury that the statements contained herein are true and the [sic] accurate to the best of my knowledge."

24

physician to testify about causation); *Broders*, 924 S.W.2d at 152–53 ("[T]here is no validity, if there ever was, to the notion that every licensed medical doctor should be automatically qualified to testify as an expert on every medical question."); *see also Fontenot Enters., Inc. v. Kronick*, No. 14-05-01256-CV, 2006 WL 2827415, at \*3–5 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.) (mem. op.) (noting treating physician had "no special training in the diagnosis or management of burns and [was] not an expert in TENS units" and holding treating physician's expert report failed to put defendant physician on notice of causal relationship between negligence and alleged injuries sustained by plaintiff).

Here, Dr. Anuvat's expert report and CV do not demonstrate that he has expertise concerning the actual subject matter about which Guillory is offering an opinion. *See Burrell*, 230 S.W.3d at 762. And despite the fact that Dr. Anuvat may have training and experience in the areas of physiatry and pain management, nothing indicates that he has knowledge, skill, experience, training, or education in actually diagnosing the causes of cervical and lumbar spine injuries in general or specifically in determining whether the purportedly negligent acts of failing to transport a patient safely and dropping her while transporting her from an ambulance to a hospital can cause the cervical and lumbar spine injuries seen in Guillory.[14] *See McMahon v.*

---

[14] Contrary to the assertions made by our learned colleague, we by no means suggest that Dr. Anuvat must "be a specialist in spinal injuries" in order to be qualified to opine on the issue of causation in this case. As previously explained, a physician

25

*Smith & Nephew Richards, Inc.*, No. 14-99-00616-CV, 2000 WL 991697, at \*2–3 (Tex. App.—Houston [14th Dist.] July 20, 2000, no pet.) (not designated for publication) (board-certified rehabilitation and pain medicine physician not qualified to testify as to causal factors which actually precipitated pain or condition).

We conclude that Dr. Anuvat's expert report and CV do not establish that he is qualified to opine on the issue of causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a). Thus, we hold that the trial court erred in overruling North Cypress EMS's objections and in denying its motion to dismiss Guillory's health care liability claim against it because Dr. Anuvat is not qualified to render an opinion related to causation.

Still yet, even if Dr. Anuvat was qualified to opine on causation, North Cypress EMS also asserts that Dr. Anuvat's expert report does not adequately address causation related to North Cypress EMS. Instead, its asserts that the report "offers no insight into how the incident caused" Guillory's cervical and lumbar spine injuries; provides no "explanation for how the disc herniations could have occurred[]

---

need not practice in the particular field about which he is testifying so long as he can demonstrate that he has knowledge, skill, experience, training, or education regarding the specific issue before the court that would qualify him to give an opinion on that subject. *Cornejo v. Hilgers*, 446 S.W.3d 113, 121 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). But the physician must be able to demonstrate that he is qualified to opine on the specific issue before the court. *Puppala v. Perry*, 564 S.W.3d 190, 202 (Tex. App.—Houston [1st Dist.] 2018, no pet.). And, here, Dr. Anuvat's expert report and CV do not establish such.

or how disc herniations and protrusions are caused at all"; fails to "address how the [incident] is purported to have caused [Guillory's injuries that Dr. Anuvat] reportedly observed"; and fails to "review or articulate the mechanisms necessary for an incident involving physical trauma to [have] cause[d] disc protrusions." Dr. Anuvat merely offers a conclusion that in reasonable medical probability one event caused another, without explanation and without linking the conclusions to the facts, and he "rel[ies] solely on the fact that the purported [incident] in this matter preceded the onset of Guillory's symptoms."

An expert report must provide a "fair summary" of the expert's opinion regarding the causal relationship between the failure of a defendant health care provider to provide care in accord with the applicable standard of care and the claimed injury, harm, or damages. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *see also Potts*, 392 S.W.3d at 630. For causation, the expert report must explain how and why the defendant health care provider's breach proximately caused the plaintiff's injury. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017). An expert report need not marshal all the plaintiff's proof necessary to establish causation at trial, and it need not anticipate or rebut all possible defensive theories that may ultimately be presented to the trial court. *Wright*, 79 S.W.3d at 52; *Cornejo*, 446 S.W.3d at 123. But an expert cannot simply opine that the breach caused the injury. *Jelinek*, 328 S.W.3d at 539.

27

Causation consists of two components: (1) cause-in-fact and (2) foreseeability. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). A health care provider's breach was a cause-in-fact of the plaintiff's injury if the breach was a substantial factor in bringing about the harm, and absent the breach the harm would not have occurred. *Id.* Even if the harm would not have occurred absent the defendant health care provider's breach, "the connection between the defendant and the plaintiff's injuries simply may be too attenuated" for the breach to qualify as a substantial factor. *Allways Auto Grp., Ltd. v. Walters*, 530 S.W.3d 147, 149 (Tex. 2017) (internal quotations omitted). A breach is not a substantial factor if it "does no more than furnish the condition that makes the plaintiff's injury possible." *Id.* A defendant health care provider's breach is a foreseeable cause of the plaintiff's injury if a heath care provider of ordinary intelligence would have anticipated the danger caused by the negligent act or omission. *Puppala*, 564 S.W.3d at 197.

In his report, Dr. Anuvat states that on September 9, 2016, Guillory, a forty-one-year-old female, sustained a fall while North Cypress EMS transported her to a hospital by a stretcher. According to Dr. Anuvat, the legs of the stretcher "failed to come down" and caused Guillory to be dropped to the ground. After the incident, Guillory had pain in her neck, midback, and low back.

On December 13, 2016, Guillory was evaluated at Interventional Spine of Texas where it was determined that she had injuries to her cervical and lumbar

spine—disc herniations and protrusions. Dr. Anuvat states that a herniated disc or protrusion is a condition in which the annulus fibrosus (outer portion) of the vertebral disc is torn, enabling the nucleus (inner portion) to herniate or protrude through the fibers. And disc herniations are more likely to be caused by an incident such as trauma or repetitive use.

As to causation of Guillory's cervical and lumbar spine injuries, Dr. Anuvat states that "Guillory was a young healthy female with no history of trauma, musculoskeletal pain complaints, or radiculopathy symptoms prior to the fall she suffered on [September 9, 2016]." After the fall, Guillory had complaints of pain. *Cf. Jelinek*, 328 S.W.3d at 533 ("Care must be taken to avoid the *post hoc ergo propter hoc* fallacy, that is, finding an earlier event caused a later event merely because it occurred first."); *Curnel v. Hous. Methodist Hosp.-Willowbrook*, 562 S.W.3d 553, 565 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("It is not enough that one event occurred before the other . . . .").

Dr. Anuvat then references two studies explaining that one study found that less than twenty percent of individuals under sixty years old have a disc herniation in the low back and that ten percent of individuals over the age of forty years old have a disc herniation in the neck. And a second study found that there is a thirty-three percent chance that the disc protrusions seen on the MRI were due to a degenerative process. Thus, Dr. Anuvat concludes that because Guillory was

29

forty-one years old at the time of the fall, it is "within a reasonable medical probability that the [incident] caused [Guillory's] disc herniations and not the normal aging process." And Dr. Anuvat states that "[t]o a reasonable degree of medical certainty, . . . Guillory's cervical and lumbar disc herniations and associated pain complaints were caused by the fall from the stretcher that . . . [she] experienced while being transported by North Cypress EMS" on September 9, 2016.

An expert cannot simply opine that a breach of the standard of care caused the plaintiff's injury. *Jelinek*, 328 S.W.3d at 539; *see also Abshire*, 563 S.W.3d at 224 ("A conclusory statement of causation is inadequate . . . ."). And an expert's conclusion that "in medical probability" one event caused another is nothing more than an expert's simple *ipse dixit*, which is insufficient to establish causation. *Jelinek*, 328 S.W.3d at 539–40; *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). Here, Dr. Anuvat offers no more than a bare assertion that the alleged breach of the applicable standard of care by North Cypress EMS resulted in Guillory's cervical and lumbar spine injuries. *See Jelinek*, 328 S.W.3d at 540; *see also Abshire*, 563 S.W.3d at 224; *Wright*, 79 S.W.3d at 53–54 (report inadequate where expert does not explain how health care provider's negligent conduct caused injury). And Dr. Anuvat makes no attempt to explain the basis of his statements or link his conclusions to specific facts. *See THN Physicians Ass'n v. Tiscareno*, 495 S.W.3d 599, 614 (Tex. App.—El Paso 2016, no pet.) ("[T]he expert must at a

30

minimum explain the connection between [the health care provider's] conduct and the injury to the [plaintiff]."). "A report that merely states the expert's conclusions about . . . causation" does not fulfill the purposes of requiring a good-faith effort. *Palacios*, 46 S.W.3d at 879. And "[p]roximate cause cannot be satisfied by mere conjecture, guess, or speculation." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008).

We conclude that Dr. Anuvat's expert report does not adequately inform North Cypress EMS of the causal relationship between its failure to provide care in accord with the applicable standard of care and the claimed injury, harm, or damages. Thus, we hold that the trial court erred in overruling North Cypress EMS's objections and in denying its motion to dismiss Guillory's health care liability claim against it because Dr. Anuvat's report does not adequately address causation.[15]

---

[15] Under Texas Civil Practice and Remedies Code section 74.403 only physicians are qualified to render causation opinions in suits involving health care liability claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a); *Walgreen Co. v. Hieger*, 243 S.W.3d 183, 186 n.2 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Thus, Guillory cannot rely on the expert report of Jannarone, a non-physician, to address the causal relationship between the failure of North Cypress EMS to provide care in accord with the applicable standard of care and Guillory's claimed injury, harm, or damages. *See Hieger*, 243 S.W.3d at 186 n.2 (appellate court may only consider physician's expert report in determining whether plaintiffs met their statutory obligation as to element of causation). Because Jannarone is not qualified to render an opinion on causation, we need not address the portion of North Cypress EMS's first issue in which it asserts that Jannarone's expert report does not adequately address causation. *See* TEX. R. APP. P. 47.1. To the extent that Guillory refers to Jannarone as "Dr. Jannarone" in her briefing, there is nothing in his expert report or his CV to support the notion that Jannarone is a physician. *See* TEX. CIV. PRAC. &

We sustain North Cypress EMS's second issue.

## Thirty-Day Extension to Amend Reports

In her brief, Guillory states that should this Court determine that the expert reports of Jannarone and Dr. Anuvat are inadequate, she requests that we "grant a thirty (30) day extension of time such that [she] may cure any noted deficiencies."

Texas Civil Practice and Remedies Code section 74.351(c) affords the trial court the ability to grant one thirty-day extension for a plaintiff to cure deficiencies in her expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). Thus, when an appellate court reverses a trial court's denial of a motion to dismiss a health care liability claim due to the omission of any of the statutory expert report requirements, the appellate court may remand the case to the trial court to consider granting a thirty-day extension for the plaintiff to cure the deficiencies in the report. *Leland v. Brandal*, 257 S.W.3d 204, 207–08 (Tex. 2008); *see also Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (stating deficient report may be cured by amending report or by serving new report from separate expert that cures deficiencies in previously filed report); *Protzman v. Gurrola*, 510 S.W.3d 640, 654– 55 (Tex. App.—El Paso 2016, no pet.).

---

REM. CODE ANN. § 74.001(a)(23) (defining "[p]hysician" (internal quotations omitted)).

32

The trial court is in the best position to decide whether a cure for an inadequate expert report is feasible. *See Samlowski v. Wooten*, 332 S.W.3d 404, 411–12 (Tex. 2011). And the Texas Supreme Court has instructed that "trial courts should be lenient in granting [a] thirty-day extension[] and must do so if [the] deficiencies in an expert report can be cured within the thirty-day period." *Scoresby*, 346 S.W.3d at 554; *see also Cook v. Broussard*, No. 01-17-00943-CV, 2018 WL 3384638, at *6–7 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (mem. op.). Here, because Guillory has not been given the opportunity to cure any deficiencies in her expert reports, it is appropriate to remand this case to the trial court for consideration of whether the deficiencies in the expert reports can be cured, and therefore, whether to grant an extension of time. *See Scoresby*, 346 S.W.3d at 549 ("An individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so."); *see also Mangin*, 480 S.W.3d at 706 ("[W]hen the court of appeals finds deficient a report that the trial court considered adequate, the plaintiff should be afforded one 30-day extension to cure the deficiency, if possible." (internal quotations omitted)).

North Cypress EMS argues in its reply brief that Guillory waived her right to amend her expert reports because, at the hearing on North Cypress EMS's objections and motions to dismiss, Guillory's counsel stated: "I want to stand on what we [sic] got. I think we have got sufficient detail in the reports. . . . What's required is a

good faith attempt to cast a fair summary of the expert's opinions on the statutory elements. We've supplied that with respect to both reports."

North Cypress EMS has not provided this Court with any pertinent authority for its assertion that Guillory waived her right to request a thirty-day extension for her to cure any deficiencies in her expert reports. *See* TEX. R. APP. P. 38.1(i); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). And we note that Texas Civil Practice and Remedies Code section 74.351(c) only empowers the trial court to grant the plaintiff a thirty-day extension to cure *deficiencies found in the plaintiff's initial expert reports*. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (plaintiff can be granted extension to cure deficiency only after elements of report are found to be deficient); *Hilton v. Wettermark*, No. 14-14-00697-CV, 2015 WL 2169516, at *6 (Tex. App.—Houston [14th Dist.] May 7, 2015, no pet.) (mem. op.); *Marino v. Wilkins*, 393 S.W.3d 318, 331–32 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Here, the trial court overruled North Cypress EMS's objections to Guillory's expert reports and denied its motions to dismiss Guillory's health care liability claim against it. Because the trial court did not find any deficiencies in her initial expert reports, Guillory was never entitled to a thirty-day extension to cure any deficiencies in her expert reports. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (plaintiff can be granted extension to cure deficiency only after elements

of report are found to be deficient); *Hilton*, 2015 WL 2169516, at *6; *Marino*, 393 S.W.3d at 331–32.

## Conclusion

We reverse the trial court's order overruling North Cypress EMS's objections and denying its motions to dismiss the health care liability claims made against it by Guillory. We remand this case to the trial court to determine whether to grant Guillory a thirty-day extension to file an expert report or reports that are compliant with the TMLA and for further proceedings consistent with this opinion.

Julie Countiss
Justice

Panel consists of Justices Goodman, Landau, and Countiss.

Goodman, J., dissenting.